## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF LOUISIANA

IMMIGRATION SERVICES AND
LEGAL ADVOCACY,

                   *Plaintiff*,

v.

ELIZABETH MURRILL, in her official
capacity as Attorney General of the State of
Louisiana;

ANNE KIRKPATRICK, in her official
capacity as Superintendent of the New
Orleans Police Department;

ROBERT HODGES, in his official
capacity as Superintendent of Louisiana
State Police; *and*

JASON WILLIAMS, in his official
capacity as District Attorney for Orleans
Parish;

                   *Defendants*.

Case No. 2:25-cv-2421

## **VERIFIED COMPLAINT**

1.      "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston, Tex. v. Hill,* 482 U.S. 451, 462–63 (1987).

2.      This case is about the State of Louisiana's unlawful attempts to use the threat of vague and overbroad felony charges to silence the residents of New Orleans, Louisiana, from

1

speaking out about the rights of immigrants during the federal operation dubbed "Catahoula Crunch" or "Operation Swamp Sweep."[1]

3.     Plaintiff Immigration Services and Legal Advocacy ("ISLA," the "Plaintiff," or the "Nonprofit") sues for violations of its constitutional First and Fourteenth Amendment rights. ISLA is a legal services organization that defends the rights of immigrant communities and advocates for just and humane immigration policy.

4.     ISLA believes it has every right to engage in free speech practices, including providing Know Your Rights presentations and trainings ("KYRs") to the community. Those KYRs consist of explaining individuals' legal rights during an immigration arrest; the legal rights that attach to immigrants while in their home, including the ability to demand a judicial warrant prior to allowing Immigration and Customs Enforcement ("ICE") entry; and the legal rights of the public to document immigration arrests in public places.

5.     ISLA used to liberally engage in such free speech activities before August 1 of this year, when Act 399 (the "Act") went into effect—and before Defendant Attorney General of the State of Louisiana, Elizabeth ("Liz") Murrill, started issuing threats about the Act's impended application to Operation Swamp Sweep.

6.     The threats from the Attorney General's Office to the community came after journalists uncovered, on or around November 18, 2025, that the Department of Homeland Security ("DHS") would begin an operation, reportedly called  "Operation Swamp Sweep," throughout south Louisiana at the close of the calendar year.

---

[1]    Press Release, Department of Homeland Security, *DHS Launches Operation Catahoula Crunch in New Orleans Targeting Criminal Illegal Aliens Released From Jail and Back into American Communities* (Dec. 3, 2025), https://www.dhs.gov/news/2025/12/03/dhs-launches-operation-catahoula-crunch-new-orleans-targeting-criminal-illegal;  Jack Brook, *DHS plans to deploy 250 border agents to Louisiana in major immigration sweep, AP sources say,* Associated Press (Nov. 18, 2025), https://apnews.com/article/new-orleans-border-patrol-swamp-sweep-1d30a524e80fa25912a38c3aea79832b.

7.      Speaking for the State of Louisiana, Defendant Murrill endorsed Operation Swamp Sweep.[2]

8.      Predictably, news of the looming DHS and ICE operation prompted outrage among New Orleanians, who share a deep love and respect for the city's immigrant community. Protests and community actions in and around New Orleans were initiated in response to Operation Swamp Sweep.[3]

9.      The demand for KYRs, as previously provided by ISLA, increased in anticipation of the Operation and the 250 federal officers that would descend upon New Orleans in order to execute it.[4]

10.     Defendant Murrill, for her part, responded by publishing a series of statements on the heels of the community's outcry against Operation Swamp Sweep. On November 24, 2025, she issued a formal statement, titled "*Attorney General Murrill reminds citizens and elected officials the consequences of interfering with federal immigration authorities during 'Operation Swamp Sweep.'*"[5] In that statement, she listed the potential vehicles for prosecution available to her, sending a message to those who might "oppose or challenge [ICE] action." *Cf. City of Houston, Tex. v. Hill,* 482 U.S. 451, 462–63 (1987). The main law she used to threaten prosecution: Act 399.[6]

---

[2]    Kenny Kuhn, *Louisiana AG Liz Murrill endorses federal ICE operations in New* Orleans, WWL, https://www.wwltv.com/article/news/local/louisiana-ag-liz-murrill-endorses-federal-ice-operations-in-new-orleans/289-0146081f-7a9c-4fc5-a2bc-a3080d4f8bc7.

[3]    John Stanton, *Broadside to host New Orleans ICE Rapid Responder training Nov. 25*, The Gambit (Nov. 25, 2025), https://www.nola.com/gambit/news/politics_elections/broadside-to-host-new-orleans-ice-rapid-respondertraining-nov-25/article_ef7b3449-0399-4742-850a-996fd1477245.html.

[4]    Zoe Sottile, *What we know – and don't know – about the immigration crackdown expected in New Orleans this week*, CNN (Dec. 1, 2025), https://www.cnn.com/2025/12/01/us/new-orleans-immigration-crackdown-border-patrol.

[5]    Louisiana Attorney General's Office, *Attorney General Murrill reminds citizens and elected officials the consequences of interfering with federal immigration authorities during 'Operation Swamp Sweep,'* (last accessed Nov. 24, 2025), https://www.aglizmurrill.com/Article/387.

[6]    Of note, the Attorney General relied upon La. R.S. 14:130.1, and not, *e.g.*, Obstruction of Public Passages (La.

11.     Defendant Murrill did not stop with a single "reminder." She also published statements on social media "advis[ing]" the public that violation of state laws, including Act 399, could result in "imprisonment with hard labor and thousands of dollars in fines."[7]



12.     This messaging was clearly targeted at preventing and forestalling any additional protests or advocacy concerning Operation Swamp Sweep.

13.     ISLA made a concerted decision to stop providing KYRs to the community on or around November 18, 2025.

14.     It is ISLA's view that the Nonprofit cannot provide KYRs any longer because it has no idea how broadly Act 399 sweeps.

---

R.S. 14:100.1), Resisting an Officer (La. R.S. 14:108), or even Simple Assault (La. R.S. 14:38). The conclusion that can be drawn is that the existing laws in the Revised Statutes—while more clearly defined and potentially applicable—would not allow for the targeting of speech.

[7]     Attorney General Liz Murril (@AGLizMurrill), X (Nov. 24, 2025 at 12:10 p.m.), https://x.com/AGLizMurrill/status/1993019518512513298; Attorney General Liz Murril (@AGLizMurrill), Facebook (Nov. 24, 2025 at 12:11 p.m.), https://www.facebook.com/AGLizMurrill/posts/be-advised-it-is-against-louisiana-law-to-obstruct-ice-or-border-patrol-the-pena/1380809683712286 (for the same statement).

15.     As relevant here, on August 1, 2025, the Act added specific language to the Obstruction of Justice statute, La. R.S. 14:130.1. That newly added language threatens monetary fines and imprisonment for those who "[knowingly] commit ***any act*** intended to hinder, ***delay***, prevent, or otherwise ***interfere with or thwart federal immigration enforcement efforts***." La. R.S. 14:130.1(A)(6).

16.     Indeed, the newly added language to the law on its face appears to encompass almost any and all activities that would inform people about their legal rights in the face of ICE arrests—as both providing that information and advocating for one's legal rights based on that information could now be deemed violative of the Act, and thus lead to arrest, imprisonment, and/or the imposition of monetary fines.

17.     Theoretically, under the statutory language of the Act, informing people about their legal rights, which includes telling them that they are not required to allow ICE to enter their homes absent a judicial warrant, could be deemed an "act intended to . . . delay . . . federal immigration enforcement efforts."

18.     Significantly, when the law was debated in the Legislature, Louisianans expressed concern that the broad sweep of the Act's language would strike fear in the community and chill speech and advocacy.[8]

19.     The statutory language has had that effect on ISLA, particularly after the Attorney General invoked it ahead of Operation Swamp Sweep.

---

[8]     *Senate Committee on Judiciary C: Senate Bill 15,* La. House Reg. Sess. (May 7, 2025) at 1:02:40, https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2025/05/050725JUDC (public comment on concerns around SB15's scope and effect).

20.     Unsurprisingly, analysts of the Act's passage have opined that the law "could be plausibly invoked against anyone protesting ICE's actions in Louisiana or distributing Know Your Rights information to immigrants."[9]

21.     To challenge this encroachment on its First Amendment rights, ISLA brings this lawsuit.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (original jurisdiction), and 5 U.S.C. § 702 (waiver of sovereign immunity).

23.     Plaintiff's claims for relief are predicated on violations of the U.S. Constitution by the federal government, and upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under the color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States.

24.     Venue lies in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b). On information and belief, Defendants Kirkpatrick and Williams reside in this district, and the facts giving rise to this lawsuit take place in this District.

## PARTIES

25.     Plaintiff Immigration Services and Legal Advocacy ("ISLA"), based in New Orleans, Louisiana, is a 501(c)(3) nonprofit organization that, over the past four years, has focused on providing pro bono legal services to people in ICE detention in Louisiana. Attorneys at ISLA provide direct legal services to detained people at all ICE detention facilities in Louisiana. These

---

[9]     *The Multi-Pronged Authoritarian Attack on the Right to Dissent*, Human Rights First (Nov. 25, 2025) https://humanrightsfirst.org/library/the-multi-pronged-authoritarian-attack-on-the-right-to-dissent.

services include representation in proceedings relating to bond and parole, habeas corpus petitions in federal court, and administrative complaints regarding conditions of confinement in detention. ISLA also partners with public defenders and local counsel to provide clients with post-conviction representation in criminal matters. ISLA further provides Know Your Rights presentations, trainings and other guidance to the immigrant community in Louisiana.

26.     Defendant Murrill is the Attorney General of Louisiana. Under the Louisiana Constitution, she is "the chief legal officer of the state" and may, "upon the written request of a district attorney, . . . advise and assist in the prosecution of any criminal case." La. Const. art. IV, § 8. In February of this year, Defendant Murrill signed a cooperative endeavor agreement with the Orleans Parish District Attorney that gives the Attorney General the authority "to prosecute any and all criminal matters in Orleans Parish resulting from an arrest or investigation conducted by Louisiana State Police."[10] Defendant Murrill is sued in her official capacity.

27.     Defendant Robert P. Hodges is the Superintendent of the Louisiana State Police. The State Police, under his supervision and control, have a duty to "prevent and detect crime, apprehend criminals, enforce the criminal and traffic laws of the state, [and] keep the peace and good order in the state in the enforcement of the state's police powers." La. Rev. Stat § 40:1379(A). Among other responsibilities, the State Police have recently established a permanent officer presence in New Orleans. Defendant Hodges is sued in his official capacity.

28.     Defendant Anne Kirkpatrick is the Superintendent of the New Orleans Police Department, which is under her supervision and control. She has a duty to "[e]nforce the ordinances of the City and all state and municipal laws and prevent the violation thereof." New

---

[10]    Metia Caroll, *Louisiana AG Liz Murrill and Orleans DA Williams Execute Agreement to Make New Orleans Safe,* WDSU (Feb. 6, 2024), https://www.wdsu.com/article/louisiana-ag-liz-murrill-and-orleans-da-jason-williams-execute-history-agreement-on-new-orleans/46652038.

Orleans Home Rule Charter §4-502. The New Orleans Police Department serves as peace officers in Orleans Parish under her supervision. Defendant Kirkpatrick is sued in her official capacity.

29.     Defendant Jason Williams is the District Attorney for Orleans Parish. Under the Louisiana Constitution, he has "charge of every criminal prosecution by the state in his district." La. Const. art. V, § 26(B). Defendant Williams is sued in his official capacity.

## STATEMENT OF FACTS

### *ISLA's Critical Role in Advocating for Immigrants' Rights and Challenging Unlawful Immigrant Detention*

30.     Plaintiff ISLA works to provide free legal representation to immigrants detained in Louisiana, often traveling hundreds of miles to visit Louisiana's ten immigrant detention centers.

31.     Louisiana's detained immigrant population is the second highest in the country.

32.     With a staff of 12 people, ISLA is the only nonprofit in the state dedicated to providing free legal representation before the immigration courts to those in ICE custody.

33.     In New Orleans, ISLA provides KYRs to community members who inquire about their legal rights before, during, and after apprehension by immigration officials. These KYRs are conducted in private and public spaces, such as churches and public libraries. They are provided to people of all immigration statuses and to U.S. citizens.

34.     ISLA also partners with local attorneys to assist them in state and federal criminal cases that implicate immigrants and have the potential to affect their status in the United States.

35.     In the run-up to Operation Swamp Sweep, due to ISLA's longstanding ties to the community, ISLA received a number of KYR requests from community members.

36.     But in light of Defendant Murrill's threatened use of La. R.S. 14:130.1(A)(6), the Nonprofit has refrained from providing KYRs.

37.    ISLA fears language newly added by Act 399 will subject the Nonprofit to prosecution if it provides the requested KYRs the community seeks. For example, ISLA fears prosecution may result if the Nonprofit or its agents advise people about immigrants' rights during Operation Swamp Sweep, including, *inter alia*, that immigrants may demand a judicial warrant if ICE officials appear at their home, or that all individuals may film federal officers during ICE arrests.

38.    At bottom, ISLA fears that KYRs advising people of their legal rights in the face of Operation Swamp Sweep violates the Act, despite the provision of such information falling within the ambit of core protected speech.

39.    Despite receiving requests to appear, speak, and provide legal information at community events concerning Operation Swamp Sweep, ISLA has declined to do so, fearing prosecution by Defendant Murrill under the Act—based on her clear edict that it will be used by law enforcement once Operation Swamp Sweep begins.

40.    Faced with the penalties that now attach to La. R.S. 130.1(A)(6), ISLA has opted to silence itself in the face of Act 399's newly added language.

41.    ISLA continues to silence itself today.

### The Central Role the Immigrant Community Plays in New Orleans

42.    Plaintiff ISLA is deeply rooted in the immigrant community in New Orleans.

43.    That community is central to New Orleans' economy and its people. Indeed, after Hurricane Katrina, the immigrant community shouldered much of the burden rebuilding New Orleans.[11] Immigrants built homes with Habitat for Humanity and planted trees in the wake of the

---

[11]    James Finn, *They came to rebuild New Orleans after Katrina. Under Trump, ICE is trying to deport them,* Times-Picayune (Aug. 25, 2025) https://www.nola.com/news/politics/national_politics/katrina-workers-ice-detention/article_dd0b1272-65c7-4a00-beef-eeff8cbe2547.html; *Rebuilding After Katrina: A Population-Based Study of Labor and Human Rights in New Orleans* 12 (U.C. Berkeley 2006).

storm's devastation.[12] A monument to Latino immigrants' contributions to rebuilding the City stands today at Crescent Park.[13]

44.     New Orleans' immigrant community has always blossomed because New Orleans itself is, as is often noted, the product of vast multicultural exchange.[14]

45.     New Orleans' unique culture reflects its African, Caribbean, French, and Spanish roots.[15]

46.     For centuries, languages, foods, and peoples have mingled in the city, producing a special mélange that is instantly recognizable—from the city's architecture and food,[16] to its jazz[17] and bounce music,[18] to the Black Masking Indians,[19] to the iconic Social Aid and Pleasure Clubs' second lines.[20]

[12]   Marina Dunbar, *After 47 years in the US, this Iranian mother was taken by ICE from her yard. Her family just wants her home*, Guardian (Jul. 3, 2025), https://www.theguardian.com/us-news/2025/jul/03/ice-iran-donna-kashanian.

[13]   *Statue unveiled to honor Latino workers who helped rebuild city after Katrina*, WWL (Nov. 10, 2018), https://www.wwltv.com/article/news/local/statue-unveiled-to-honor-latino-workers-who-helped-rebuild-city-after-katrina/289-613333863.

[14]   Jack Brook, *Multicultural New Orleans is the next battleground in Trump's immigration crackdown*, PBS (Nov. 20, 2024), https://www.pbs.org/newshour/nation/multicultural-new-orleans-is-the-next-battleground-in-trumps-immigration-crackdown.

[15]   *Mardi Gras in Louisiana*, Louisiana State Museum (last accessed Nov. 25, 2025) https://louisianastatemuseum.org/exhibit/mardi-gras-louisiana; Adolfo Guzman-Lopez, *For Mardi Gras, A Parade Celebrates Mexican Immigrants In New Orleans,* NPR (Mar. 4, 2019), https://www.npr.org/2019/03/04/698915479/for-mardi-gras-a-parade-celebrates-mexican-immigrants-in-new-orleans.

[16]   Richard Sexton, Creole World 74 (Historic New Orleans Collection 2014).

[17]   National Park Service, *Jazz Origins in New Orleans* (last accessed November 24, 2025), https://www.nps.gov/jazz/learn/historyculture/history_early.htm.

[18]   Steven Kearse, NPR, *How New Orleans soldiered through struggle and gave rap its bounce*, last accessed Nov. 24, 2025, https://www.npr.org/2023/08/04/1191678922/hip-hop-50-new-orleans.

[19]   Matt Sakakeeny, *Mardi Gras Indians*, 64 Parishes (Feb. 1, 2016), https://64parishes.org/entry/mardi-gras-Indians.

[20]   Matt Sakakeeny, *Jazz Funerals and Second Line Parades,* 64 Parishes (last accessed Nov. 24, 2025), https://64parishes.org/entry/jazz-funerals-and-second-line-parades.

47.     During the Civil Rights Movement, New Orleans was the site of large-scale political expression and advocacy for constitutional rights.[21] As the seat of the United States Court of Appeals for the Fifth Circuit, the rulings and argument made in New Orleans were at "the forefront of change" that ultimately changed the face of the nation.[22]

48.     The profound legacy of the Civil Rights Movement is alive and well in New Orleans.[23] Last year, for example, protestors gathered outside the Fifth Circuit to protest on behalf of the rights of those in the Deferred Action for Childhood Arrivals (DACA) program before a hearing of national import.[24]

49.     It should come as no surprise, then, that New Orleans communities have reacted strongly to the widespread deportation and detention campaign that the federal executive branch aspires to have "shatter historic records," and lead to the "deport[ation] [of] nearly 600,000 [noncitizens] by the end of President Donald Trump's first year since returning to office."[25]

### ISLA Has Stopped Providing KYRs in and around New Orleans Because of Act 399

50.     It was in New Orleans that large-scale protests erupted against federal executive policies that targeted student-protestors—like Mahmoud Khalil, who was detained in violation of the Constitution at one of the facilities ISLA serves.[26]

---

[21]    *New Orleans*, the United States Civil Rights Trail (last accessed Nov. 24, 2025), https://civilrightstrail.com/destination/new-orleans.

[22]    Jack Bass, Unlikely Heroes 327 (Simon & Schuster 1981).

[23]    *Resilience and Hope 60 Years After New Orleans School Desegregation*, Voices of the Civil Rights Movement (last accessed Nov. 24, 2025), https://voicesofthecivilrightsmovement.com/articles/new-orleans-4.

[24]    Kevin McGill and Jack Brook, *Nearly 200 demonstrate at New Orleans courthouse as judges hear DACA immigration case*, Associated Press  (Oct.10, 2024), available at https://www.nola.com/news/courts/nola-5th-circuit-daca-immigration-case/article_6a27c33a-8720-11ef-a571-8f00081607ea.html.

[25]    U.S. Dep't of Homeland Sec., *DHS Removes More than Half a Million Illegal Aliens From US* (Oct. 27, 2025), https://www.dhs.gov/news/2025/10/27/dhs-removes-more-half-million-illegal-aliens-us.

[26]    Missy Wilkinson, *'The system itself is the problem': Hundreds rally in New Orleans against ICE raids*, Times-Picayune  (Jul.  1,  2025),  https://www.nola.com/news/the-system-itself-is-the-problem-hundreds-rally-in-new-orleans-against-ice-raids/article_92124d19-4750-40d4-b573-e20d64af7d90.html.

51.    At that time—before the Act took effect—ISLA started to receive an uptick in requests for KYRs from the immigrant community.

52.    It followed through on those requests.

53.    But with the Act now in full force and effect, even though New Orleans and immigrant communities in the state have continued to seek ISLA's guidance, the Nonprofit has felt compelled to turn down KYR requests. ISLA was previously targeted by the State of Louisiana, and fears that—because of its position in the immigrant community—it will be targeted again.[27]

54.    ISLA wishes to advise people about the rights of immigrants during Operation Swamp Sweep, but the newly added language included in Act 399 makes doing so without legal assurances virtually impossible.

55.    For ISLA, it is critical to empower immigrant communities and their allies to stand up against unlawful activity that may form part of Operation Swamp Sweep.

56.    In light of Operation Swamp Sweep, ISLA aims to empower the hardworking individuals, families, and immigrant communities that form such a critical part of New Orleans' life and culture with information concerning their rights.[28]

57.    At their core, the DHS and ICE actions that form part of the Operation are the result of a newly minted, rapid mass deportation playbook initiated by the federal executive branch—

---

[27]    Sam Karlin, *Jeff Landry subpoenaed three immigrant aid nonprofits. They say it would cause 'chilling effect'*, Advocate (Mar. 22, 2023), https://www.theadvocate.com/baton_rouge/news/politics/elections/jeff-landry-subpoenas-draw-rebuke-from-immigrant-groups/article_2ca88b1c-c8fd-11ed-b15f-cf3750274eb9.html.

[28]    On information and belief, the thousands currently targeted by the Operation are likely largely individuals owed statutory protections that cannot simply be swept away by virtue of an ICE arrest and attendant detention. These immigrants, by and large, are those who have been granted parole under 8 U.S.C. § 1225(b); orders of supervision under 8 U.S.C. § 1231; and those in regular immigration proceedings pursuant to 8 U.S.C. § 1226(a). These individuals are, for the most part, entitled to individualized determinations prior to arrests or re-arrests by ICE or DHS. Importantly, if the protections inscribed in law and regulations were followed by ICE and DHS, on information and belief, there would be no need for Operation Swamp Sweep at all.

sweep into a city, terrorize the community, and violate the Constitution. This has been the case in

New York, New York, and in Chicago, Illinois.[29]

58.    ISLA fears it will now also be true in New Orleans, Louisiana, with one key

difference at play: the Louisiana Attorney General is threatening to prosecute those, such as ISLA,

who speak out and seek to assist immigrants vulnerable to potentially unlawful actions that may

occur during Operation Swamp Sweep.

59.    Caught within Defendant Murrill's ambit are Defendants Hodges, Kirkpatrick, and

Williams. They may not "ignore" "federal immigration efforts," but instead *must* assist ICE and

DHS during Operation Swamp Sweep (*e.g.*, by charging and arresting those who violate Act 399)

or else they too could face prosecution. La. R.S. 14:134; *see also, e.g.,* La. R.S. 33:83.

### *First Amendment Requirements on Speech Regulation*

60.    The First Amendment is clear: the government "shall make no law . . . abridging

the freedom of speech[.]" U.S. Const. amend. I; XIV. That Amendment has been incorporated

against the states by the Fourteenth Amendment.

61.    The ambit of free speech protection is wide, recognizing only discrete types of

unprotected speech, such as true threats, incitement to imminent lawless action, and obscenity.

*Counterman v. Colorado*, 600 U.S. 66, 73 (2023).

62.    Our law further recognizes that public streets, public parks, and sidewalks "are

among those areas of public property that traditionally have been held open to the public for

---

[29]    Courts in those jurisdictions found the playbook unconstitutional. *See Mercado v. Noem*, No. 25-CV-6568 (LAK), 2025 WL 2658779, at *34 (S.D.N.Y. Sept. 17, 2025) (finding Defendants violated the First and Fifth Amendments in its mass detention campaign in New York and enjoining their actions); *Gonzalez v. Noem*, No. 25 C 13323, 2025 WL 3170784, at *1 (N.D. Ill. Nov. 5, 2025) (granting Temporary Restraining Order requiring Defendants to remedy the "serious circumstances" inherent in the squalid, unconstitutional conditions of the detention center); *Chicago Headline Club v. Noem*, No. 25 C 12173, 2025 WL 3240782, at *3 (N.D. Ill. Nov. 20, 2025) (likewise enjoining Defendants after finding they "have failed to follow constitutional guidelines").

expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property." *United States v. Grace*, 461 U.S. 171, 179, (1983). Plaintiff DHS and ICE plan to initiate their operations in these same fora.[30]

63.     In such public fora, the government may only restrict speech under rules that "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* at 177.

64.     Content-based restrictions trigger strict scrutiny. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). The same rule applies to viewpoint discrimination.

65.     A law is content based when it applies to particular speech "because of the topic discussed or the idea or message expressed." *Id.*

66.     "[L]aws that cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with" the speech at issue are content or viewpoint based and subject to strict scrutiny. *Id.* (internal quotations omitted).

67.     Relatedly, restrictions on the ability to film police activity in public places are also limited by the First Amendment and subject to intermediate scrutiny. *See Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017).

---

[30]     *See Payton v. New* York, 445 U.S. 573, 586 (1980) ("It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable'"). *See also* ICE Enforcement and Removal Operations, *Fugitive Operations Handbook,* July 23, 2010 ("Because neither a Warrant for Arrest of Alien (1-200) nor an administrative Warrant of Removal (1-205) authorizes you to enter the subject's residence or anywhere else affording a reasonable expectation of privacy, you must obtain voluntary consent before entering a residence"); Gwynne Hogan, *Sidewalk Arrests Seize New Yorkers in ICE's Latest Surge,* The City (Nov. 26, 2025), https://www.thecity.nyc/2025/11/26/ice-arrests-streets-sidewalks-detention-immigrants.

68.     Therefore, for example, the right to protest and the right to film Operation Swamp Sweep in public streets are both protected speech—as Plaintiff ISLA would advise community members in a KYR presentation. But Plaintiff ISLA cannot provide such a KYR presentation without fear of violating La. R.S. 14:130.1(A)(6).

69.     Where a plaintiff alleges that a law chills large amounts of speech, courts often relax standing requirements. A plaintiff's showing that a substantial amount of protected speech is proscribed by a statute is enough to "invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression[.]" *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (internal quotations omitted). This is because such proscriptions chill individuals' free speech, harming "not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Id.*

70.     In the Fifth Circuit, to have standing to bring First Amendment challenges, "[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020), *as revised* (Oct. 30, 2020).

### *Fourteenth Amendment Requirements on Speech Regulation*

71.     Government actions that chill speech may also violate the Fourteenth Amendment under the void-for-vagueness doctrine.

72.     The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

73.    The "more important aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

74.    Enter Act 399.

### Act 399 Blanketly Bars "Any Act," Including Protected Speech

75.    As relevant in this matter, Act 399 amended existing Louisiana criminal law and expanded the elements of "obstruction of justice." La. R.S. 14:130.1.

76.    It added to the existing requirement that a person have knowledge that an act "has, reasonably may, or will affect *an actual or potential present, past, or future criminal proceeding*" (emphasis added), to further include the same as to a "civil immigration proceeding, or official act of an agent or employee of a governmental entity."

77.    Act 399 also added to La. R.S. 14:130.1(A) the following language as an example of the conduct proscribed: "(6) Knowingly committing **any act intended to hinder, delay**, prevent, or otherwise **interfere with or thwart** federal immigration enforcement **efforts**" (emphasis added).

78.    The Act added to La. R.S. 14:130.1(B) the following penalties for violating the Act: "(6) When the obstruction of justice involves a civil immigration proceeding, the offender shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than one year, or both."

79.    La. R.S. 130.1(A)(6)'s language, particularly the phrasing "any act," by its plain terms implicates speech.[31]

---

[31]    Definitions include "one or some indiscriminately of whatever kind; unmeasured or unlimited in amount, number, or extent." *Any,* Merriam-Webster Dictionary (last accessed Nov. 24, 2025) https://www.merriam-webster.com/dictionary/any.

80.    So too do the phrases pertaining to acts that "hinder," "delay," "otherwise interfere with" or "thwart." No standards or definitions of these terms, or what it means to have knowledge of them, are included in the law.[32]

81.    Louisiana statutes provide no guidance. "[T]hwart" appears only twice in other Louisiana laws, and only once under Title 14.[33]

82.    The language "federal immigration enforcement efforts" could mean almost anything related to actions by federal agents in relation to immigration, or by federal agents whose agencies engage with immigration in any way. It is standardless and could encompass anything even tangentially related to federal immigration policy.

83.    In fact, the Act contains no boundaries or other language that provides notice that it does not apply to speech.

84.    The vagueness of the law exacerbates the law's chilling effect on protected speech.

85.    Taken at face value, the language of La. R.S. 130.1(A)(6) means that, when Operation Swamp Sweep strikes New Orleans, the law as we know it loses its knowable meaning.

86.    This is why Plaintiff ISLA cannot inform people about what speech or actions fall inside, or outside, the scope of the newly added language to Act 399, and why ISLA's own speech has been chilled.

87.    The default assumption: any and all speech that could be construed as "hindering," "delaying," "interfering with," or "thwarting" Operation Swamp Sweep is proscribed—including simply providing information about constitutional rights, which has the capacity to "thwart" a

---

[32]    "Thwart," for example, can encompass "to oppose successfully" or "defeat the hopes or aspirations of." This expansive word can mean whatever a law enforcement wants it to mean. *Thwart*, Merriam-Webster Dictionary (last accessed Nov. 24, 2025) https://www.merriam-webster.com/dictionary/thwart.

[33]    La. R.S. 14:102.25 (Unlawfully supplying any product for the purpose of falsifying a screening test); La. R.S. 9:355.14 (Factors to determine contested relocation [of a child]).

national federal immigration effort that has already been found to violate the Constitution in myriad ways.[34]

88.      An anti-Swamp Sweep rally, for example, could fall within the ambit of this law, if individuals "know" that that First Amendment-protected activism might somehow "thwart" "federal immigration efforts" by, for example, affecting federal immigration enforcement officials' morale,[35] or occur in an area where enforcement activity may take place (which could theoretically be anywhere in New Orleans or the surrounding area). The same is true of a KYR presentation for the immigrant community, particularly if the presenters "know" that in providing legal advice they may "hinder, "thwart" or "delay" less scrupulous "federal immigration efforts." Op-eds, blogs, social media—these all can fit within the language of La. R.S. 130.1(A)(6). This is patently absurd.

89.      Therefore, the protected speech that is swept within the law's vague construction is substantial and disproportionate to any lawful proscriptions.

90.      As such, because of Act 399's elasticity, the Court is "here confronted with a statute which, by its own words and as applied, purports to punish mere advocacy and to forbid, on pain of criminal punishment, assembly with others merely to advocate [. . .]." *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969).

91.      The First Amendment does not allow this kind of restriction.

92.      With her public comments on the statute, Defendant Murrill has now wielded Act 399 to suppress speech she finds offensive.

---

[34]   *See supra* n. 29.

[35]   Elaine Mallon, *Noem says she and DHS officials denied restroom access in Illinois city hall,* CBS Austin (Oct. 3, 2025), https://cbsaustin.com/news/nation-world/kristi-noem-says-she-and-dhs-officials-denied-restroom-access-in-illinois-city-hall.

93.     She has publicly threatened to prosecute anyone who violates the law, without providing additional context as to the contours of it.[36]

94.     Doing so has had the intended effect—like many others in the community, ISLA's speech has been chilled.

95.     As Louisiana's premier (and only) free, direct-representation organization for detained immigrants before immigration courts, ISLA plays a unique role in the state and in the New Orleans immigrant community. For this reason, immigrant communities in Louisiana and their allies turn to ISLA for guidance in the face of threats to the freedoms of immigrants.

96.     Without any guideposts to understand what Act 399 means, or how Defendants might or plan to wield it, ISLA has engaged in self-censorship and refrained from speaking via KYRs—due to the threat of prosecution, arrest, imprisonment, and/or fines that may apply to the Nonprofit and its agents, or to those who may apply the information they learn from ISLA at a KYR.

97.     ISLA wishes to lead KYRs in the community, as is its First Amendment right.

98.     It did so regularly before the Act went into effect.

99.     But now, out of fear of arrest, felony imprisonment, and monetary sanctions, Plaintiff ISLA has self-censored to avoid running afoul of the law—declining requests and refraining from conducting KYRs, which had once been a core part of their work.

100.    Defendant Murrill's continued and explicit threat of prosecution under Act 399, now near certain in light of her messaging in support of Operation Swamp Sweep, has chilled Plaintiff ISLA's speech.

---

[36]  *See supra* n. 5; *see also* Ian Auzenne, *Murrill issues warning over New Orleans "sanctuary city" policies*, WWLTV, (Nov. 24, 2025), https://www.audacy.com/wwl/news/local/murrill-issues-warning-over-new-orleans-sanctuary-policies.

101.    For that reason, the Act's language and Defendant Murrill's implied intent—to target the free speech of individuals who speak out against Operation Swamp Sweep—violates the First and Fourteenth Amendments of the United States Constitution.

**COUNT I**
**42 U.S.C. §1983**
**VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION**
*As Applied to Plaintiff*

102.    Plaintiff realleges and reincorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

103.    Plaintiff ISLA, feeling compelled to act by Operation Swamp Sweep and respond to the community, intends to engage in wholly protected speech—specifically, to imminently provide in-person KYRs if this Court so allows.

104.    These KYRs are protected by the First Amendment.

105.    At face value, La. R. S. 130.1(A)(6) proscribes KYR presentations.

106.    KYR presentations definitionally describe limitations on governmental (here, federal immigration officers') authority. Advising someone, for example, that government entry into a home requires a judicial warrant could be construed as "knowingly" "hindering," "thwarting," or "delaying" "federal immigration enforcement efforts."

107.    But the Constitution is the supreme law to which all other laws must yield. So La. R.S.130.1(A)(6) must yield, as applied to Plaintiff ISLA.

108.    At bottom, the right to challenge police action is a core freedom protected by the First Amendment. *City of Houston, Tex. v. Hill,* 482 U.S. 451, 462–63 (1987). So too is the right to provide KYRs that get to the very heart of (a) what one may and may not do in the face of DHS and ICE enforcement efforts; and (b) the laws with which DHS and ICE must comply before engaging in said enforcement efforts.

109.    Defendant Murrill's timely threats to the community, highlighting the vague and overbroad language of La. R.S. 130.1(A)(6), appear to serve no purpose other than to chill any speech acts that might touch and/or challenge the legality of the actions taken by actors who form part of Operation Swamp Sweep. That is unconstitutional, particularly as applied to Plaintiff.

110.    Defendant Murrill's application of the law was announced indiscriminately, with no legal guardrails, sweeping in Plaintiff's protected speech and chilling it.

111.    Because KYRs are protected speech, KYRs cannot be lawfully proscribed by La. R. S. 130.1(A)(6).

112.    Because La. R. S. 130.1(A)(6)'s scope is untethered to any of the interests that purportedly justify it, the statute is not narrowly tailored. *See Moore v. Brown*, 868 F.3d 398, 404 (5th Cir. 2017) ("[I]f a substantial portion of the burden on speech does not advance the goals of the rule, the rule is not narrowly tailored").

113.    Because La. R.S. 130.1(A)(6) leaves no alternative channels open for protected speech, and instead by its plain meaning prohibits any and all KYR presentations, it is unconstitutional as applied to Plaintiff ISLA's KYRs.

114.    Because  applying La. R.S. 130.1(A)(6) to ISLA's KYRs would discriminate on the basis of content and viewpoint, it is unconstitutional as applied to Plaintiff's KYRs.

### COUNT II
### 42 U.S.C. §1983
### VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION

115.    Plaintiff realleges and reincorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

116.    The Act's language, codified now as La. R.S. 14:103(A)(6), violates the First Amendment.

117.    The language "any act" and "thwart" reaches KYRs. Indeed, it reaches "op-ed[s] or public speech[es] criticizing the immigration system and supporting the rights of long-term undocumented noncitizens to remain, at least where the author or speaker knows that, or recklessly disregards whether, any of her readers or listeners are undocumented," which "swamp[s] its lawful applications, rendering it vulnerable to an overbreadth challenge." *United States v. Hansen*, 599 U.S. 762, 774 (2023).

118.    La. R.S. 130.1(A)(6) thus sweeps in a "substantial" amount of protected speech, wholly disproportionate to the proscribed conduct at issue. *Id*.

119.    La. R.S. 130.1(A)(6) discriminates against speech by necessarily looking to the content itself and "defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 163–64 (2015).

120.    La. R.S. 130.1(A)(6) further constitutes viewpoint discrimination and, for that additional reason, triggers strict scrutiny.

121.    La. R.S. 130.1(A)(6)'s broad proscriptive language is not narrowly tailored.

122.    Because the language of the statute sweeps in protected conduct and discriminates on the basis of content and viewpoint, La. R.S. 14:103.1(A)(6) is unconstitutional.

## COUNT III
### 42 U.S.C. §1983
### VIOLATION OF THE FOURTEENTH AMENDMENT

123.    Plaintiff realleges and reincorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

124.    Just as the language in La. R.S. 130.1(A)(6) violates the First Amendment for the reasons stated above, it is also void for vagueness under the Fourteenth Amendment.

125.    When a government policy fails to provide people of ordinary intelligence with a reasonable opportunity to clearly understand what conduct it prohibits, it is unconstitutionally vague.

126.    A void-for-vagueness challenge can be successfully made "when laws have the capacity to chill constitutionally protected conduct, especially conduct protected by the First Amendment." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546 (5th Cir. 2008).

127.    Such is the case at bar.

128.    The language added by the Act, specifically La. R.S. 130.1(A)(6), includes the terms "any act," "interfere with," "thwart," and "federal immigration enforcement efforts." These terms are unconstitutionally vague.

129.    Such language could encompass any speech, such as KYRs, because they may "interfere with" or "thwart"  "federal immigration enforcement efforts" to alert individuals that, for example, the Fourth Amendment protects immigrants against federal officials' unlawful entry into the home.

130.    Instead of informing the public about the speech and activities allowed by La. R.S. 130.1(A)(6) and, by contrast, the acts proscribed by it, Defendant Murrill has said almost nothing about the Act's limits—in effect emphasizing that the vague statutory language could be used to prosecute "any act."

131.    Defendant Murrill's posted threats referencing the Act demonstrate that the language contained in La R.S. 130.1(A)(6) was intended to have a chilling effect on speech.[37]

132.    La. R.S. 130.1(A)(6) fails "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

---

[37]    *See supra* n. 6.

133.    Nothing in the statutory language provides any notice to the public as to what conduct is proscribed and what conduct risks being charged with a felony.

134.    The law does not "provide explicit standards for those who apply them." *Grayned v. City of Rockford,* 408 U.S. 104, 108-109(1972).

135.    Indeed, by its very terms, because it can encompass "any act," the law "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

136.    Because the Act fails to provide people of ordinary intelligence any fair notice of what kind of behavior is permissible and what kind of behavior will cause them to be arrested, La. R.S. 130.1(A)(6) is unconstitutionally vague on its face.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

a.    Assume jurisdiction over this matter and enter judgment for Plaintiff ISLA and against Defendants;

b.    Declare that La. R. S. 130.1(A)(6) violates the First Amendment as applied to Plaintiff's Know Your Rights presentations, trainings, and guidance;

c.    Declare that La. R.S. 130.1(A)(6) violates the First Amendment because it encompasses a substantial amount of protected speech and censors speech on the basis of its content and viewpoint;

d.    Declare that La. R. S. 130.1(A)(6) is unconstitutionally vague;

e.    Declare that La. R. S. 130.1(A)(6) is unconstitutional as applied to Plaintiff's core political speech;

f.    Enjoin Defendants from enforcing La. R. S. 130.1(A)(6) against Plaintiff ISLA;

g.  Award attorney fees under 42 U.S.C. § 1988;

h.  Award costs of suit;

i.  Grant such other relief as the Court deems just and proper.


Respectfully submitted,

*/s/ Charles Andrew Perry*
ACLU Foundation of Louisiana
Charles Andrew Perry
LA Bar No. 40906
Nora Ahmed*
NY Bar No. 5092374
1340 Poydras St., Ste. 2160
New Orleans, LA 70112
Tel: (504) 250-4879
(504) 522-0628
aperry@laaclu.org
nahmed@laaclu.org
*Counsel for Plaintiff*
*\*Pro hac vice application forthcoming*