# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IMMIGRATION SERVICES AND LEGAL ADVOCACY,<br><br>          P<small>LAINTIFF</small>,<br><br>v.<br><br>ELIZABETH MURRILL, in her official capacity as Attorney General of the State of Louisiana, et al.,<br><br>          D<small>EFENDANTS</small>. | Civil Action No. 2:25-cv-02421-NJB-MBN |

## STATE DEFENDANTS' OPPOSITION TO MOTION FOR EX PARTE EMERGENCY TEMPORARY RESTRAINING ORDER

The Court should deny the Motion for Ex Parte Emergency Temporary Restraining Order, ECF 4, not least because Plaintiff has no Article III standing since Plaintiff faces no imminent harm. Plaintiff's Complaint and Motion are premised on an incorrect view of Act 399: that it prohibits Plaintiff from "giving Know Your Rights presentations and trainings ('KYRs') to allies and members of the New Orleans immigrant community." ECF 4-1 at 1. It does not. Plaintiff cites no instance of Act 399 being enforced to prohibit such pure First Amendment-protected speech, nor would the Attorney General or Louisiana State Police enforce Act 399 in that manner.[1] In fact, Plaintiff cites no instance of any obstruction of justice statute ever being enforced to cover simply advising someone about their legal rights—and Plaintiff notably does not even claim that Act 399 does so. Plaintiff says only that Act 399 "appears" to do so.

All this is unsurprising because Act 399 covers only actual obstruction of justice—conduct, especially violent conduct, of the sort that is rampant (and being actively prosecuted) across the Nation right now.[2] The basic misconception in Plaintiff's filings thus renders the Motion pointless: There is nothing to enjoin or restrain because Plaintiff does not seek to engage in conduct that is actually covered by Act 399. In fact, that misconception squarely demonstrates, among other things, that Plaintiff has no Article III standing (or any legal claim at all) and that this case is not ripe. And even if that were not so, that Plaintiff has purportedly censored itself for months while

---

[1] Given this stated position, this Court's denial of the Motion based on the State's representation would bind the State under basic principles of judicial estoppel from asserting in the future that mere "presentations and trainings" standing alone—the subject of the Motion—could violate Act 399. *See Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011).

[2] *See, e.g.*, Zoe Sottile et al., *DHS says agents were shot at amid chaotic day of immigration enforcement operations in Chicago area*, CNN (Nov. 12, 2025), tinyurl.com/y9tz74e9; Fedor Zarkhin, *Feds say Oregon 17-year-old used his car to 'violently attack' ICE agents*, MSN (Nov. 24, 2025), tinyurl.com/53nzd39v; Josh Marcus, *'Outrageous': 21 arrested and four officers injured in protest clashes at Chicago-area ICE facility*, Independent (Nov. 15, 2025), tinyurl.com/29rcvrny

Act 399 has been on the books and has only now sought relief would independently foreclose relief. Accordingly, the Court should deny the Motion.

1. A proper understanding of the law disposes of the Motion and this case. Louisiana Revised Statutes 14:130.1 enumerates a number of acts as "[t]he crime of obstruction of justice." As amended by Act 399, one of those acts is "[k]nowingly committing any act intended to hinder, delay, prevent, or otherwise interfere with or thwart federal immigration enforcement efforts." La. R.S. 14:130.1(A)(6). In order to constitute a crime, that act must be committed "with the knowledge that the act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding, civil immigration proceeding, or official act of an agent or employee of a governmental entity." *Id.* 14:130.1(A).

As numerous federal courts have held with respect to a federal obstruction statute, the prohibition on "any act"—particularly in the obstruction context—"is directed towards conduct, not speech." *E.g.*, *United States v. McHugh*, 583 F. Supp. 3d 1, 28 (D.D.C. 2022) (citation omitted) (collecting cases). Indeed, this is so obvious that, while it is possible to imagine a hypothetical where pure speech alone "constitutes the 'act' of interfering with a law-enforcement officer," the hypothetical necessarily is a "rare" bird. *Id.* at 29 (citation omitted). Instead, the heartland application of obstruction statutes such as 14:130.1 is in the context of those violent scenes where defendants have physically inhibited a law-enforcement officer from carrying out his duties.

This is especially so given the ordinary legal meaning of the term "act": "Something done or performed." *Act*, Black's Law Dictionary (12th ed. 2024); *see also id.* ("The process of doing or performing"). The conduct-based focus of that term thus ordinarily requires a physical act, not simply the spoken word, that impinges upon an officer's own performance.

Whatever the outer bounds of the statute, however, they are not relevant here because Plaintiff's Motion is extremely narrow: It rests only on the "as applied" claim—that is, Act 399 "as applied to Know Your Rights information, presentations, and trainings." ECF 4-1 at 4. As Plaintiff has described that pure speech, it plainly comes nowhere close to effectuating the sort of physical intrusion that could constitute obstruction in violation of 14.130.1 as amended by Act 399. To be clear, neither Plaintiff's Complaint nor its Motion cites any evidence that anyone has ever enforced a mine-run obstruction of justice statute like 14:130.1 to bar the mere advisement of legal rights. That is not how obstruction of justice statutes work, and it is not what 14:130.1 does. In fact, even Plaintiff refuses to say under oath that the statute actually covers Plaintiff's desired conduct. *See, e.g.*, ECF 4-1 at 5 (the statute "appears, at face value, to criminalize the provision of KYR information"; "these terms appear to proscribe KYRs"); ECF 1, ¶ 16 ("the newly added language to the law on its face appears to encompass almost any and all activities"), ¶ 129 ("Such language could encompass any speech, such as KYRs").

2. That understanding means the Complaint and Motion are baseless, both as a factual matter and as a legal matter. As a factual matter, it makes no sense for the Motion to demand a restraining order that allows Plaintiff to "giv[e] ... KYRs to allies and members of the New Orleans immigrant community." ECF 4-1 at 1. No law prohibits from Plaintiff from doing so right now. Thus, the requested restraining order would accomplish nothing for Plaintiff. Because the factual premise of Plaintiff's entire case is wrong, both the Complaint and the Motion are meritless.

That factual problem points up a series of legal reasons why any restraining order would be legally invalid. *First*, it means that Plaintiff has no Article III standing. As part of the Constitution's "case-or-controversy requirement," a plaintiff must identify: (1) "an injury that is 'concrete, particularized, and actual or imminent'"; (2) that is "fairly traceable to the challenged

4

action"; and (3) that is "redressable by a favorable ruling." *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (citation omitted). Where, as here, a plaintiff seeks "prospective equitable relief, a plaintiff must demonstrate continuing harm or a 'real and immediate threat of repeated injury in the future.'" *Id.* (citation omitted). But Plaintiff's problem is that there is no current or imminent harm because Plaintiff faces no threat of enforcement from the Attorney General and the Superintendent regarding "Know Your Rights information, presentations, and trainings"—for the simple reason that Act 399 does not cover that pure speech. ECF 4-1 at 4. Moreover, because there is no injury to begin with, no order from this Court could "redress" that non-existent injury.

Plaintiff repeatedly claims that it has suffered harm because it "has stopped providing KYRs in the face of the law." *E.g.*, ECF 4-1 at 7. As just explained, there is no actual imminent threat of harm. And it is hornbook law that "self-inflicted" injuries do not confer Article III standing. *See, e.g.*, *Texas v. United States*, 809 F.3d 134, 159 (5th Cir. 2015) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending" (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013))). There is thus no question that Plaintiff lacks standing to sue—and thus has no substantial likelihood of succeeding on the merits of any of its claims (and faces no irreparable harm).

*Second*, and relatedly, Plaintiff has no cause of action. In its Motion, Plaintiff invokes only its "as applied" challenge to Act 399—that is, "as applied to Know Your Rights information, presentations, and trainings." ECF 4-1 at 4. By definition, that "as applied" challenge fails for the basic reason that Act 399 does not apply to such speech (at least without more, which Plaintiff does not allege). No application of the law means there is no viable as-applied challenge.

5

*Third*, and also relatedly, this lawsuit is not ripe. If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," then the claim is not ripe. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985). Here, for all the reasons expressed above, Act 399 does not cover Plaintiff's desired speech—and so, Plaintiff's as-applied claim, which is based on hypothetical events that will not "occur at all," *id.*, effectively will never be ripe. For the same reason, Plaintiff cannot make out the "hardship" necessary to overcome a ripeness problem. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). It will quite literally suffer no harm by the denial of the Motion (and the dismissal of this suit).

*Fourth*, sovereign immunity bars this suit against the Attorney General and the Superintendent of the Louisiana State Police. As State officials sued in their official capacities, they may be sued only if Plaintiff could satisfy the *Ex parte Young* exception to sovereign immunity. Relevant here, the *Ex parte Young* inquiry asks whether the State official has a "demonstrated willingness" to conduct the enforcement action challenged by the lawsuit. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (citation omitted). As this brief makes clear, however, because Act 399 does not cover Plaintiff's desired conduct, these State officials of course would not enforce Act 399 otherwise. That is the opposite of the "demonstrated willingness" required to get around sovereign immunity—and thus, this suit against them does not get off the ground.

*Finally*, because Plaintiff has sued over nothing, its request for a restraining order amounts to a request for an impermissible obey-the-law injunction—that is, an order directing Defendants to follow the First Amendment and not use Act 399 to prosecute pure speech that Act 399 does not even cover. It is difficult to understand the puzzling and improper nature of that request. *See,*

*e.g.*, *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) ("A general injunction which in essence orders a defendant to obey the law is not permitted.").

3. Although any and all of the foregoing problems independently requires a denial of the Motion, it bears noting that the denial also is required because Plaintiff delayed for months before challenging Act 399. *See, e.g.*, *SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, 2022 WL 137051, at *3 (E.D. La. Jan. 14, 2022) (Vance, J.) ("Plaintiff waited over a month before filing this TRO," which "undermines plaintiff's assertion that [it] has suffered and will continue to suffer irreparable harm without the immediate relief provided by a TRO."); *accord Premium Parking Serv., LLC v. Olivier*, 2023 WL 5275219, at *4 (E.D. La. Agu. 16, 2023) (Vitter, J.) (four-month delay). By Plaintiff's own telling, it has self-censored since "the Act went into effect" on August 1, 2025—that is, *for over four months*. ECF 1, ¶¶ 5, 98–99. That is the classic sort of delay that itself independently warrants the denial of a TRO request.

Recognizing as much, Plaintiff appears to suggest that it is the Attorney General's recent public statements about enforcing Act 399 that precipitated the Motion. But those statements *post-dated by months* the actual point in time at which Plaintiff purportedly began censoring itself for fear of prosecution under Act 399. Moreover, Plaintiff omits that the Attorney General's public statements say exactly nothing about enforcing Act 399 against the sort of pure speech in which Plaintiff desires to engage—for the obvious reason that the Attorney General would never enforce Act 399 in that way given that Act 399 has nothing to say about such speech. The reality is that Plaintiff has been self-inflicting harm for months, only to finally run to this Court with a request for an immediate ex parte TRO. This conduct alone requires the denial of Plaintiff's Motion.

\*　　\*　　\*

The Motion is based on a factually incorrect premise: that Act 399 bars "Know Your Rights presentations and trainings" and thus that a restraining order is necessary "to enjoin Defendants from prosecuting, arresting, imprisoning, and fining Plaintiff and its agents for providing KYRs." ECF 4-1 at 1, 2. Act 399 does not cover that pure speech, and the Attorney General and Superintendent would not enforce Act 399 otherwise. Accordingly, Plaintiff's Motion—and Complaint—is not viable for all the reasons above. The Motion should be denied.[3]

Dated: December 4, 2025

Respectfully submitted,

/s/ Zachary Faircloth
ZACHARY FAIRCLOTH (La #39875)*
  *Principal Deputy Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
(225) 326-6766
fairclothz@ag.louisiana.gov

*Counsel for Defendants Elizabeth Murrill and Robert Hodges*

*motion to enroll forthcoming

---

[3] Because service of process has not yet been effected, Defendants reserve all defenses and arguments that may be asserted in their responsive pleading, if one becomes necessary.